Would the clerk call the first case, please? Thank you. You know, for one, a Marsha Adams, which do work versus employers insurance company of Wausau, by John Lee insurance company, I believe I'm Matthew Walsh market comment and travelers casualty insured company, I believe by Donna Thank you, Mr Colburn. Good morning. William Colburn for the plaintiff appellants. In this case, this matter involves the enforcement and the vindication of plaintiff's vested rights and interests in liability policies that were in effect at the time they, or their decedents were exposed to asbestos from Sprinkman Sons Corporation of Illinois. I'll refer to them as old Sprinkman for the sake of ease here, since we have a couple of Sprinkman's going on. Old Sprinkman was an insulation contractor that used asbestos containing insulation in the 60s, 70s, up into the late 70s. And it sold its assets to Sprinkman insulation, new Sprinkman in 2002. And in February of 2003, it filed articles of dissolution. Therefore the windup period would have ended in about February of 2008. The plaintiffs here or their decedents were all exposed to asbestos from old Sprinkman back in the 60s and 70s timeframe when the insurance policies issue were in effect. The critical point of law here, and essentially the, the rock on which we base the relief we're seeking here is the very clear rule of Illinois law that these individuals acquired rights in those insurance policies that vested at the time that they were exposed to asbestos. And the question presented here is whether or not the subsequent dissolution of old Sprinkman completely bars these individuals from being able to vindicate those vested rights in the policies. And we filed a declaratory judgment action in Peoria County, Illinois, which is where old Sprinkman was located and where new Sprinkman is located today. And the remedy that we seek is that either the shareholders, Arthur and Rhonda Kremers, who were the shareholders at the time that Sprinkman dissolved or new Sprinkman to which the assets were transferred, be designated as nominal defendants such that the liability and amounts of damages in each individual case can be established, thereby enabling these individuals to vindicate their rights that they possess in these policies without the necessity of actually suing a dissolved corporation, which 12.80 would prohibit in these instances or without the necessity of violating the Illinois law prohibition against direct actions against insurance companies. So at the time of the sale of the assets to new Sprinkman, was there any reference in the agreement to liabilities? No. Liabilities did not pass under that agreement. New Sprinkman did not assume the prior liabilities of old Sprinkman. And in fact, the defendants have pointed this out that issue was actually litigated in a case up in the city of Chicago where new Sprinkman was held not to be a successor in interest to old Sprinkman. And the relief we seek here is simply limited to the coverage under the policies. New Sprinkman acquired the assets of old Sprinkman is in the business of doing insulation contracting work today. Thankfully they no longer use asbestos in their insulation contracting work. But we're not trying to seek any of those operating assets. And that that's actually a very important. Was the insurance policy an asset that transferred at all? Yes, it was. If we look at the citizens electorate case, that's a seven circuit case. In this situation, did it transfer to the new Sprinkman? It would appear that we didn't have a copy of the actual asset purchase agreement when we filed our case. So we brought this in the alternative and based on what the defendants provided here, it would appear that it did not transfer to new Sprinkman under the asset purchase agreement, which means by operation of Illinois law it then devolved upon Arthur and Rhonda Kremers as the shareholders at the time. Any asset that is not transferred by the corporation prior to its dissolution goes to the shareholders. And at the time we filed, we didn't know which direction it went. So we brought our ask for relief in the alternative, neither new Sprinkman if the policy did transfer or the Kremers if it did not would be the proper nominal party. And it would appear, although the court below never never got to that issue because they decided that our relief was barred by the 12.80, it would appear that the Kremers would probably be the proper nominal parties here. And insurance policies have been defined as a corporate asset and it does not disappear at dissolution. Therefore those policies do remain out there and our clients have rights in those policies. Now, as third party beneficiaries, is that the theory? Ah, no, it's not a third party beneficiary. For the best good, right? The best case we've got on that is the Rieger case. And that's a situation where an individual was injured diving into a lake and eventually brought a declaratory judgment action because the insured denied both the duty to defend or indemnify. And then the court held as a matter of law that in Illinois under insurance law, an injured individual acquires a vested right in a policy at the time of the events that caused the injury. Now, that was a sudden traumatic injury. I don't want to divert your argument too much. You've answered my question. No, okay. Very good. Third party would be more if the contract contemplated it when it was made as opposed to when the injury occurred. And you're saying there's no extinguishment of that, right? That it vested at the time these workers were employed by Sprinkman one with coverage by a third party insurance company at that time? Yes, Your Honor. But just to clarify, these aren't former employees. These were individuals who were employed by businesses where Sprinkman did work. So we don't have, we don't have, Fulton would close us out on that one these days, but, the basis of this is product liability. Yes. The basis is product liability. These are individuals who were on premises where Sprinkman did work, but were not actual employees of Sprinkman. And our position is that those rights are not extinguished by the dissolution. Citizens Electric does define this as an asset that can continue on past dissolution. And there's nothing in the law that would cause these to be extinguished. And in that regard, even though it doesn't apply to insurance policies, we've noted a number of cases wherein assets that pass to shareholders in dissolution, the shareholders themselves have been allowed to go out and then enforce rights that they've acquired under these assets. One of those is the Dubie case where the shareholders after dissolution acquired rights in a lease. And what the court there said is that, well, the asset acquired is the lease. The right was to get the return of the security deposit. And even after the corporate dissolved and the dissolution statute bars actions by corporations every bit as much as it bars actions against corporations, the shareholder was nevertheless permitted to go out and recover the security deposit. In another situation, in the shooting case, the shareholders took a note on behalf of the corporation when it sold its assets off prior to dissolution. And when the purchaser of those assets failed to pay the note, even though the corporation was dissolved in the windup period ended, those shareholders were permitted to exercise their rights under that note and go out and enforce their rights in that note against the purchaser. So is it fair to say that these shareholders assumed a risk by not transferring the liability with the asset that they could be named as nominal plaintiffs? Yes, they did. They did assume that risk. They might be nominal plaintiffs that they might be called upon. And they're going to have to enforce the contract's rights. Exactly. And their personal assets are not at risk, just as the operating assets of a newsprint are not at risk. And that's important under another case that we've cited. And I'll mention that under the Moore versus Nick's finer food case, which is the one where the minor was allowed to sue. And one of the things that the court notes there was the availability of indemnity insurance, of liability insurance in that case, such that the goal of the corporate dissolution statutes would not be disrupted. And what that means is that one of the goals of being able to dissolve a corporation is that those assets can then be freed up to do other productive things in the state of Illinois. And that won't be disrupted here. Those assets of old Springman have gone to new Springman. Those assets themselves are not at risk. The only asset that is at issue here is that insurance coverage in which my clients have a vested interest and which really serves no purpose other than to compensate these individuals for the injuries that they received. Under a lot of insurance policies, there are various terms. For example, some of them are occurrence policies and there are restrictions on when someone who is a beneficiary of the policy can enforce any right that they have under that policy. Is this one, you talked about notes and you talked about leases. Is there, are you claiming that there is an unlimited right to recover under these policies? Well, there's our information and this is on information and belief is that there's about $20 million worth of unexhausted insurance coverage. At some point the policy limits that were agreed to when these various policies and we're talking about a number of different policies over different years from different insurers. Eventually those policy limits would be exhausted and that would be the end of it. Just as it's, you know, old Springman still existed eventually if they exhaust their insurance coverage, then there's, there's no insurance available. Other limitations might come into play here. What we're seeking really in this declaration is more a declaration of coverage as opposed to actual individual indemnity in these cases that would have to come after the procedure we've suggested. So you're saying in the answer, I think just to follow up on Justice McVeigh's question is that those individual policy terms in themselves may have a cessation of coverage limitations. There could be. Which was back to my original question about, you know, exhaustion of rights and that sort of thing. So that, so that is a possibility. There is a possibility. And although the defendants did sort of as an afterthought point out, well, the insured has to be held liable before the policy coverage kicks in. And they put the emphasis on the word obligation, where our emphasis is on what the determination of liability and damages must be made ahead of time. The court below essentially ruled as a matter of law that the courts were powerless in this area because the legislature had acted here and we didn't really get down to dealing with the language of the policies in this case. This was also on a motion to dismiss prior to any discovery being had. So I only had the advantages of what policies people decided to attach to their, their, their moving papers. But certainly in this instance, the court below dismissed from the outset that would be something that if your honors decided to reverse this and remanded that we would probably have to get into to some extent in the court below. We never got there because the court determined that the court was powerless to deal with this situation. The answer down below was there's no one to sue. Is that correct? That essentially was, was the answer down below. I'm sorry. Two minutes? Yes. That there's no one to sue. And that's what we're seeking here. In those situations where you've got the lease or where you've got the security deposit, the law provides a clear avenue. You just go out and sue the holder of this. Our problem is that the parties that are essentially holding the proceeds are the insurance companies and Illinois law prohibits direct actions. There's no one to sue in this case for purposes of declaratory relief. That was the ruling basically. I believe that the court said that there's no one to sue for purposes of establishing liability and damages because that would have to be old Sprinkman. Our position is that we don't have to sue old Sprinkman. We can sue nominal parties and that the law recognizes situations where a nominal party is sued or where an insurer is sued, where it's already limited to insurance coverage where there's no risk of the jury sees being having to pay their personal assets, that it's all about establishing liability and damages in order to access coverage in a proceeding where the jury doesn't hear a word one about the fact that there is coverage available. So rather than getting something new, so you could go through all of this and still not have the policy. It's very unlikely in this situation, your honor, because prior to its dissolution these companies were paying asbestos cases in similar circumstances. There might be issues where a particular individual jury decides they weren't sufficiently exposed or simply that old Sprinkman wasn't the culprit, that it was somebody else. Yeah, but I think the question I think is, doesn't it depend upon the contractual coverage between the nominal defendants and the insurance company as to whether there is coverage? It depends upon the contractual coverage between old Sprinkman and the insurance companies and the extent to whether or not the nominal defendants can actually step in as the surrogate for purposes of enforcing the rights that my clients got prior to the dissolution. So the answer is yes, this could go back down to the court below and we start examining policy language. We could wind up losing on the equities around the policy language, but we never got there. And today that's what we're asking for, is the opportunity to get to those determinations as opposed to stopping short by saying that the courts just cannot have any power as a matter of law to act here. Okay. I have a confession. My strength is not in, I do not have a strong insurance. I didn't either before this. Well then maybe you're not the right person. I have the benefit of two colleagues on this bench that have a lot more experience than I do in this area. So I'm going to ask a question of you because I don't know the answer. Corporations want to be viewed as persons. They want to have status as persons in other areas of the law. If old Springman was Tom Springman who died in 2003, what would it do to the cause of action? What would it do to your lawsuit? And you can tell me if it's a dumb question and it doesn't mean. No, it's a very good question. And in our view, that coverage would still be available. There would certainly be situations where perhaps after the estate was closed, there might be issues with being able to access that coverage. But in our position, it would be the same. While the estate was open, the assets of the estate as well as the coverage would be available with that coverage would survive for injuries like this, that were Tom Springman had caused a latent injury. That would be something that the courts would have the power to address whether or not based on the equities of the matter, there could be a process for accessing that coverage. With the corporation, they don't go through the estate process. Their assets aren't held or pooled. So do I view the five year limitation here as the estate process, the probate process? It's somewhat analogous. I think the windup is somewhat analogous to an estate process. Well, yeah, in an estate, you have a six month claim period. So I think you've changed the facts a little bit. You said, well, while the estate was open, I think the question is the estate is closed. And after the estate was closed, I think the same rules would apply that we're talking about here. And that would be that those rights, if they were vested rights in coverage for what Tom Springman did, I think the courts would have the power to look at that situation like they did in Hamilton, like they did in Moore and determine whether or not on the, on the equities of the situation, someone with a latent injury caused by Tom Sprinkman could have a process whereby they could vindicate their rights in that coverage that existed prior to his death. You guys are my question. Okay. Thank you. Thank you, Mr. Coleman. Ms. LaBournette. Good morning. I'm going to start if I can just by picking up on your last question. I think, I think that we've, you've grappled with it, that it's in a, in a trust situation, there's a wind down period on a trust period of time during which claims against a person who's deceased have to be asserted. And that's part of the trust process of winding it down. I'm aware of no case where, and I have been doing insurance pretty much all my career. I don't know what that says about me, but at the end of a wind down period, I don't believe an individual's insurance policies would stick around in perpetuity, into perpetuity for purposes of claims against a dead person. And I'm certainly not aware of any case ever brought against the insurance policies of a dead person post dating the winding up of their affairs. I've never seen it. I guess that's proves being a negative, haven't really looked, but I would imagine you'd stumble onto that. That were actually a reasonable recovery. I think what I'd be, what we're hearing here is that that type of recovery would be consistent with the theory, the new theory. Don't get it wrong. This is something new counsel's thinking for corporations. So it would be a parallel situation as you've asked that question, I think with respect to humans, but it just doesn't exist yet. Well, yeah, but maybe I misunderstand the analysis here, but to do that, then a deceased person at any time can be nominally named as a partner. Right. That's, that's, that's what would be required under this theory and that's not the way the law works as I understand it. Second of all, your honor asked a couple of questions about the language of the policies themselves. I think that does deserve some focus and it has been touched upon in our briefing, which is these are liability policies that indemnify. So if there's not a liability to indemnify, the argument is they shouldn't be indemnifying something that doesn't exist. Okay. So that, that's how that wording is most significant, I think. And finally, well I think opposing counsel is saying we can't get there to talk about the liability because it's been extinguished. The liability has been extinguished by virtue of the dissolution statute and the survival period, the five years that follows the dissolution is what the legislature has deemed to be the proper amount of time to balance those interests between allowing a period of time for those claims to come in for latent injuries. That was the analysis and holding of the lower court basically. Correct. But it's also been a firm, it's the same analysis has been applied in many, many contexts, including most recently by the Illinois Supreme Court in the FOLTA case, which is a very similar kind of case that works. It relates to workers' compensation laws and time bars, statutes of repose in essence at the end of the workers' compensation laws and the FOLTA case dealt specifically with exactly these kinds of asbestos claims, asbestos claims where the cause of action didn't accrue. And vesting and accrual are two very different concepts. That's key here. You could have a vested interest in a policy such as in the Rieger case. What that meant is that the policyholder and the insurer couldn't work together to terminate the claimant's rights. That's a very different situation. It didn't involve dissolution at all. That's different than the windup situation, the corporate dissolution situation where the liabilities can be asserted. There are situations where they don't accrue. The asbestos claim doesn't accrue until after the five years. And in FOLTA and numerous other cases, what the courts have stated is it's an unfortunate consequence. It's a situation, but we had to do the weighing. And what the legislature did is they weighed the advantages of there being an end date and the disadvantages of certain claims not being able to be asserted. And this is the balance they struck. I'd like to go back. Which is the policy behind probating six months' claims for it. It's a similar type of analysis that you just have to have an end date at some point. And with that end date comes the end date to the policies. And that's a normal effect, too. There's no case that says the policies live into perpetuity. That's what would have to be the result here. Insurance policies for corporations would have to live into perpetuity until they're exhausted. They may never be exhausted. They may be around forever. That's not how insurance is underwritten. First of all, I think it's important for us to pause on the laws that exist, because I think that's what we're here to do, is to determine whether or not there's a claim that exists under existing law. And the agreed issues alone in this case require the affirmance of the circuit court's dismissal order. The plaintiff's tort claims did not accrue until after the insurer's policy holder, I'll call it dissolved Sprinkman, dissolved in 2003. Keep in mind an asbestos claim does not accrue until the injury is discovered. The five-year survival or wind-up period under the dissolution statute expired in 2008. Plaintiffs cannot sue dissolved Sprinkman on their tort claims due to expiration of the survival period. And there's no successor to dissolve Sprinkman's tort liabilities that plaintiffs can pursue either. Those are all things that are agreed by the parties. To avoid what they claim is the harsh outcome of the undisputed facts and law, plaintiffs are asking this court to disregard the consequences of a dissolution and to create a new equitable avenue of recovery that would permit injured plaintiffs to sue a dissolved corporation's insurer for liabilities that have been extinguished by statute and law. So be no mistake, they're asking for something new here. They request establishment of such an avenue of recovery despite the fact that Illinois courts have consistently and repeatedly construed the dissolution statute strictly and in turn ruled that it is the legislature's role to amend that statute to permit new avenues of relief like that sought here. And the legislature has expressly declined more than once to do so. I want to break this down just a bit, starting with the issue of late accrual. The language of the statute I've put on the board for purposes of saving time, I don't want to read it to you, your honors. But as I previously pointed out, there's no dispute that plaintiffs' tort claims did not accrue until after dissolved Sprinkman's dissolution. Plaintiffs concede that. That fact alone is dispositive as the Illinois Supreme Court has specifically ruled that only causes of action against a corporation which have actually accrued prior to the corporation's dissolution are preserved by the dissolution statute. That's the Pilet case. That's a 2012 Illinois Supreme Court case. Plaintiffs claim that they should nonetheless be permitted to pursue supposed interests in the insurer's policies based on such claim having vested at the time of their alleged injuries. They want to substitute vesting for accrual in essence. But what matters under the statute and under the law here is accrual, not when any supposed interests might have vested and accordingly plaintiff's claims must fail. And even if their claims had timely accrued, which they didn't, but if they had, the five year survival period expired in 2008, but plaintiffs did not first pursue their tort claims until they filed this suit in 2014. Does the statute require a lawsuit though? It says action or proceeding. And I would think that would be a claim made on the company. It doesn't necessarily have to be a lawsuit. No, what has to happen is the accrual of the claim. And for an asbestos bodily injury claim. In this situation, all of the injuries were discovered after 2008 and the company, insurance company or old Springman had never received any notice that these injured parties had issues. True. Okay. So how do you define vesting versus accrual? Are you saying they're one in the same? No, they're very different. That's my point. Vesting is for instance, the Rieger course case that counsel referred to. That was a situation where a person dove into a, when they dig out the, in a, in a hole with a pool in it, I'm losing the word. They dove in there and they were injured. Okay. The policy holder was someone who had constructed that, that land mining company or something. And the, and their insurer, those two people got together and agreed there was no coverage under the claim. The person was already injured. Their claim had already accrued. They were hurt. They were rendered quadriplegic. So they had a vested claim that was fully good to go. It was, so to speak, right. It was, it was a claim that was, had accrued already. These claims that accrued, these claims didn't accrue till the person got sick long past 2008. It's a discovery. Right, right. So they may have some vested rights in the policies at the time they were accrued. It wasn't quantified. It wasn't proven. They didn't even know they had. That's the only vesting that occurred is that they were exposed during the period of time, but they didn't have a true claim that they could assert legally. They didn't know they had anything to assert. And in other words, coverage at the time is the concept that we're trying to stretch under vesting to cover an accrual period of time. They want, they want the, they want the vesting date to be the relevant date rather than the actual accrual date. And there's lots of authority in Illinois that says, even specifically with respect to asbestos bodily injury claims, that there is no claim until accrual and accrual occurs at discovery of the illness. And in terms of transparency, there's no allegation in this case that the insurance company and Old whatever the name of the company is, bad with names too, that there was a discussion or no, no, there was, there was, there's no evidence of that. And additionally, I would take you directly to the Vance case, which says, even if it were now, no, I'm not saying it is, but even if it were, and that's also an asbestos bodily injury case, that so long as you wind down your affairs and you truly dissolve and you do it all legally, it doesn't matter why you did it. It just matters that it was done. We know there was 20 million left allegedly in the fund that was not paid out. How much was paid? You know, I have no idea, honestly, because I, I wouldn't, I would hope we'd never even get there. Cause I don't think a claim exists. I mean in the past, in the insurance company, didn't just walk away without paying. No, but, but claims paid, claims were paid. However, in, in instances like these claims are paid, when there's an actual indemnity for a liability that has been determined. In this case, we don't know for certain that there is a liability. I mean, what you've heard is, well, there wasn't a past, so there must be now. That's not necessarily true. Those amounts that were paid out by the insurance company during the, during the time that the insurance companies have paid something, they, they, they didn't just walk away from the injured parties. Correct. A timing issue. Correct. Timing or, you know, in a liability case with respect to an asbestos claimant, there could be issues of causation. Was, was the disease actually caused by smoking? Was it caused by actual exposure? Were you really exposed to Sprinkman? Were you exposed to someone else? You know, there's, there are obviously factual issues, but we, we haven't reached them on claims that have never actually accrued. So in essence, that's part of what's going on here. They're at there, what they're asking, this new system of nominal defendants would have parties, you know, the shareholders, now he's suggesting rather than old, the new Sprinkman, they have no interest in avoiding those liabilities because they're not personally liable. I mean, this is also a new concept, but they would have no reason to assert those sort of defenses about why there shouldn't be an indemnity payment in a particular case. But can't the company stand in the stead of those nominal parties and assert those defenses? What company? The insurance company? That's not been posited and there's no authority to do that. They wouldn't be a party to the case. It would be a lay down. Well, it depends on the contractual relationship, wouldn't it? Between the nominal party and an insurance company. There could be some insurance language that would permit an insurance company to step in, but not universally. No, that's why we call it contracts. There are no universal barriers. There's no universal. Except in religious belief. And furthermore, the insurance company wouldn't have any real realistic ability to prove anything because the company's long gone and that's part of the rationale behind dissolution, that there becomes a period of time in which no one can really prove these things anymore. This is something that happened, you know, years ago. How would the insurance company have access to any of the proof that it would need to mount any realistic defense? I think that's why this can't go on into perpetuity. It becomes a just not a true exercise. If you're going to put together an equitable and because, you know, and I feel like you resort to equity when the law and the facts don't fit your situations, but to construct an equitable situation here is one that is as equitable as it is equitable. It's not equitable to the extent that it doesn't allow insurance companies to actually have their day in court at all. I have a question about the language of the statute in the early part talks about the corporation and the shareholders and the directors. Does the five year cutoff period apply to the shareholders as well? Yes. There's shareholders, right? They're not liable after the five year period. No one's liable after the five year winding up period. So is there any viable basis for nominal parties here? There's not. There's not. And you can detect that from the concessions of Appellant here when he says that he agrees that the shareholders themselves have no liability. They're just nominal. They're like placekeepers in essence because the reality is under the statute, they have no liability. Thank you, Your Honors. Just one second, Mr. Colburn. I'm supposed to call on Mr. Walsh. Matt Walsh, I represent one of the other insurers here at TIG and I agree with everything my co-counsel has said in this case and I'll just go with her argument. So you adopt her argument. Thank you. And Mr. Lee. Good morning, Your Honors. John Lee, BF of Employers Insurance Company of Walsh Law. Walsh Law also adopts all the arguments presented by counsel for travelers and respectfully request this court to uphold the certain court's decision. Thank you. You need to be very nice to her because she took all those hard questions for  Mr. Colburn. Your Honor, I'm going to, I'm going to say a couple of things here. First of all, yes, the insurance company can come in and they don't have to be there and know that they control the defense. They'd likely control the defense when Old Springton was still around and they were defending it. They hired the lawyers in response to the idea that how are they supposed to defend themselves because this all happened a long time ago. That's part of the idea of getting down to the equities in this case. We're not saying that in every single case you can actually get the process we're asking for, but that the court below should have taken a harder look at whether this is a good situation. All of the individuals who were involved with Old Sprigman have been deposed. Documents have been taken in discovery. These cases are tried without the benefit of any further discovery. Both sides of the aisle have all of the testimony and all of the information necessary to effectively handle these cases where the liabilities of Old Spriggan are concerned. And it's just about whether or not these particular individuals were exposed or not. Yes, the statute does refer to shareholders as well as referring to corporations. The statute also refers to actions by as well as against. And one of the questions we ask is basically this, if the shareholders of a corporation after its dissolution who were in a position to structure their affairs to bring a timely claim within the windup period or allowed to do so afterwards, why can't actions be brought against them in order to access those same assets in a similar fashion? That's what we're asking to be done here. Going back to good old Tom Sprigman, and this is not as if we are going to open the door to perpetual liability in every single case, there has to be some vested right in the policies for that to happen to begin with. And for example, in Blankenship where the woman who was injured encountered the defective machine after the dissolution, there was no vested right. She did not come within the remedy that we're asking for here. Good old Tom Sprigman. Let's imagine that he's got a farm and he goes out and he dumps some toxic waste on his neighbor's land and that's insured and his neighbor doesn't find out about it until 10 years after Tom is dead. Do we doubt that in that situation, if there's policies that would cover the cleanup there, the court should at least take a hard look at whether or not the equities would allow that neighbor to access those policies and get his land cleaned up for rights that vested when Tom Sprigman dumped the bad stuff on his land to begin with. When we're talking about FOLTA and I'm glad the defendants brought up FOLTA here because I think FOLTA actually helps our case because one very clear distinguishing factor between this and FOLTA in addition to just the whole idea about deferring to a legislature for time periods. In FOLTA we're talking about the workers' compensation provision that basically says flat out this shall be the exclusive remedy. And that is the unspoken theory on which defendants have to hang their hat here that the only remedy is the one provided in the survival act. But unlike the exclusive remedy provision under the workers' compensation act that was enforced in FOLTA, there are no words in that statute that say this is the exclusive, this is the only remedy. To wrap up then, my little, you know, closing line here. The court in Hamilton said that there are situations in which equitable considerations counsel against a rote application of something like the survival statute and the court there looked at the equities and decided that that was an appropriate situation. The court below decided that it had no authority to even take that step and consider whether this was an appropriate situation to look at the equities. What we're asking this court to do is to reverse that determination so that we can take the next steps and fully vet the appropriateness of the remedy we seek under the equities. Thank you, Your Honors. Do you have any other questions? Yes. Who's defending Old Sprinkman here today? Old Sprinkman? Nobody. Old Sprinkman doesn't exist anymore. That's why we didn't name Old Sprinkman in the spec action. We named New Sprinkman and the Kremers along with the insurance companies, but Old Sprinkman is not named in this action, so they are not represented. Okay. Thank you. We thank all of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand.